# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF MICHIGAN

---

BENJAMIN EDWARD WATKIN and SHARON
ELIZABETH WATKIN, Husband and Wife,
Individually and as Parents and Guardians of
HRW, a Minor, EHW, A Minor, JWW, A Minor,
JMW, A Minor, and LRW, A Minor,

      Residents and Citizens of the State of
      Colorado,

               Plaintiffs,                  Case No.:  1:21-cv-127

v.                                       Hon. Hala Y. Jarbou

BETHANY CHRISTIAN SERVICES,
A Michigan Corporation, BETHANY CHRISTIAN    **PLAINTIFFS' FIRST**
SERVICES, INC., A Michigan Corporation,          **AMENDED VERIFIED**
BETHANY CHRISTIAN SERVICES OF            **COMPAINT AND**
MICHIGAN, A Michigan Corporation, BETHANY    **JURY DEMAND**
CHRISTIAN SERVICES USA, LLC, A Michigan
Limited Liability Company, BETHANY CHRISTIAN
SERVICES GLOBAL, LLC, A Michigan Limited
Liability Company, and BETHANY CHRISTIAN
SERVICES INTERNATIONAL, INC., A Michigan
Corporation,

               Defendants

_____/

Kevin Abraham Rynbrandt (P46699)
Attorney for Plaintiffs
1000 Front Avenue N.W.
Grand Rapids, MI   49504
(616) 915-9266

_____/

      Plaintiffs, Benjamin Edward Watkin and Sharon Elizabeth Watkin (hereinafter "the

Watkins"), individually, as husband and wife, and as parents and guardians of HRW, EHW,

JWW, JMW, and LRW, by and through their attorney, Kevin Abraham Rynbrandt, hereby state and allege as follows:

1. Plaintiffs, the Watkins, are husband and wife. They were married on September 3, 2011.

2. The Watkins resided in Kent County, Michigan, from August 2014 through June 1, 2020.

3. In June 2020, the Watkins moved to Colorado, and they are currently residents and citizens of the State of Colorado.

4. The Watkins are the parents and guardians of their minor daughter, HRW ("HRW"). HRW was born MV in 2007. HRW was adopted by the Watkins on February 6, 2018. Her name was changed from MV to HRW on the same date.

5. The Watkins are the parents and guardians of their minor son, EHW ("EHW"). EHW was born in 2013.

6. The Watkins are the parents and guardians of their minor son, JWW ("JWW"). JWW was born in 2014.

7. The Watkins are the parents and guardians of their minor daughter, JMW ("JMW"). JMW was born in 2017.

8. The Watkins are the parents and guardians of their minor daughter, LRW ("LRW"). LRW was born in 2019.

9. On information and belief, Defendant, Bethany Christian Services, is an adoption agency licensed by the State of Michigan; Bethany Christian Services is incorporated under the laws of the State of Michigan and provides adoption services for children and families; and Bethany Christian Services' office and principal place of business are located at 901 Eastern Avenue, NE, Grand Rapids, Michigan 49501.

10. On information and belief, Defendant, Bethany Christian Services, Inc., is an adoption agency licensed by the State of Michigan; Bethany Christian Services, Inc., is incorporated under the laws of the State of Michigan and provides adoption services for children and families; and Bethany Christian Services, Inc.'s office and principal place of business are located at 901 Eastern Avenue, NE, Grand Rapids, Michigan 49501.

11. On information and belief, Defendant, Bethany Christian Services of Michigan is an adoption agency licensed by the State of Michigan; Bethany Christian Services of Michigan is incorporated under the laws of the State of Michigan and provides adoption services for children and families; and Bethany Christian Services of Michigan's office and principal place of business are located at 901 Eastern Avenue, NE, Grand Rapids, Michigan 49501.

12. On information and belief, Defendant, Bethany Christian Services USA, LLC:

    a. is an adoption agency licensed by the State of Michigan;

    b. was formed and exists as a limited liability company under the laws of the State of Delaware;

    c. has an office located at 901 Eastern Avenue, NE, Grand Rapids, Michigan 49503, and operates its principal place of business at that location;

    d. has one member, and that member is Bethany Christian Services; and

    e. Bethany Christian Services, the sole member of Bethany Christian Services USA, LLC, is a citizen of the State of Michigan as it is incorporated in the State of Michigan and has its principal place of business located in the State of Michigan.

13. On information and belief, Defendant, Bethany Christian Services Global, LLC:

a. is an adoption agency licensed by the State of Michigan;

b. was formed and exists as a limited liability company under the laws of the State of Delaware;

c. has an office located at 901 Eastern Avenue, NE, Grand Rapids, Michigan 49503, and operates its principal place of business at that location;

d. has one member, and that member is Bethany Christian Services; and

e. Bethany Christian Services, the sole member of Bethany Christian Services Global, LLC, is a citizen of the State of Michigan as it is incorporated in the State of Michigan and has its principal place of business located in the State of Michigan.

14. On information and belief, Defendant, Bethany Christian Services International, Inc., is an adoption agency licensed by the State of Michigan; Bethany Christian Services International, Inc., is incorporated under the laws of the State of Michigan and provides adoption services for children and families; and Bethany Christian Services International, Inc.'s office and principal place of business are located at 901 Eastern Avenue, NE, Grand Rapids, Michigan 49501.

15. On information and belief, at all times relevant hereto, Bethany Christian Services, Bethany Christian Services, Inc., Bethany Christian Services of Michigan, Bethany Christian Services USA, LLC, Bethany Christian Services Global, LLC, and Bethany Christian Services International, Inc., acted together and/or as agents of each other with respect to all actions complained of herein, and Bethany Christian Services, Bethany Christian Services, Inc., Bethany Christian Services of Michigan, Bethany Christian Services USA, LLC, Bethany Christian Services Global, LLC, and Bethany Christian

Services International, Inc., all undertook and breached duties to the Watkins as set forth below. Hereinafter, Bethany Christian Services, Bethany Christian Services, Inc., Bethany Christian Services of Michigan, Bethany Christian Services USA, LLC, Bethany Christian Services Global, LLC, and Bethany Christian Services International, Inc., shall be referred to collectively as "Bethany."

16. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between the parties and the amount in controversy exceeds the jurisdictional limits of this Court.

17. Bethany, at all times relevant hereto, was acting by and through its employees, officers, agents, representatives, and/or directors.

18. Bethany advertises and promotes itself to the public as having expertise in the field of adoptions.

19. Bethany also advertises and promotes itself to the public as having expertise in the field of foster placement of children.

20. Prior to knowing of and meeting HRW, the Watkins had learned of the services of Bethany through Bethany's advertisements and promotions.

21. The Watkins applied to become foster parents with Bethany in 2015-2016.

22. Bethany directed the Watkins to complete a Foster Application, and the Watkins did so.

23. Through the completed Foster Application, the Watkins specified, among other things, that they would not be in a position to foster a child with sexual behavior or other high risk issues.

24. The Watkins requested a copy of the completed Foster Application from Bethany on multiple occasions.

25. However, Bethany has failed to provide the Watkins with a copy of the Foster Application as of the date of the filing of this Verified Complaint.

26. Bethany placed HRW as a foster child in the Watkins' home in Kent County, Michigan, on or about August 1, 2016.

27. Prior to this placement, HRW had been placed in another foster care home by Bethany from approximately March 2016 through July 2016. During that time, HRW exhibited sexually problematic and other high risk behavior toward other family members in the foster home. The foster parents recommended to Bethany that HRW no longer be placed in foster homes with young children. Bethany revealed none of these facts to the Watkins at any point in time and proceeded to place HRW in the Watkins' home knowing that the Watkins had in their home their sons, EHW, age 3 at the time, and JWW, age 2 at the time.

28. Contrary to the Watkins' specification in the aforementioned Foster Application and unbeknownst to the Watkins, Bethany placed a child with -- among other high risk psychological and behavioral issues -- sexual behavior issues with the Watkins for foster care. This child was HRW.

29. Bethany had a psychological evaluation of HRW completed on April 20, 2016.

30. The April 20, 2016 psychological evaluation documented that HRW suffered from clinically significant issues related to sexual abuse.

31. Bethany informed the Watkins of the existence of this April 20, 2016 psychological evaluation on multiple occasions, including, but not limited to, on March 13, 2017, but, in so informing the Watkins, Bethany never disclosed any of the substance from the April 20, 2016 psychological evaluation.

32. The Watkins requested a copy of the April 20, 2016 psychological evaluation on multiple occasions both prior to and after the Watkins' February 6, 2018 adoption of HRW.

33. Bethany did not provide the Watkins with a copy of the April 20, 2016 psychological evaluation until January 2021.

34. At no time prior to the February 6, 2018 adoption of HRW by the Watkins did Bethany disclose to the Watkins any of the information contained in HRW's April 20, 2016 Psychological Evaluation.

35. Prior to, at the time of, and subsequent to, the August 1, 2016 placement of HRW as a foster child under the foster care of the Watkins, HRW suffered from deep-rooted psychological and behavioral health and safety issues that were known and/or should have been known to Bethany.

36. These deep-rooted psychological and behavioral health and safety issues constituted a severe and debilitating physical, psychological, and emotional threat to HRW, herself, and to others around her, including, but not limited to, other children.

37. The fact that these deep-rooted psychological and behavioral health and safety issues constituted a severe and debilitating physical, psychological, and emotional threat to HRW, herself, and to others around her, including, but not limited to, other children was known and/or should have been known to Bethany.

38. Prior to placing HRW in the Watkins' home for foster care, Bethany failed to disclose to the Watkins HRW's deep-rooted psychological and behavioral health and safety issues and the accompanying severe and debilitating physical, psychological, and emotional threat that these issues posed to HRW, herself, and to others around her, including, but not limited to, other children.

39. Had the Watkins been aware of HRW's deep-rooted psychological and behavioral health and safety issues prior to commencing their foster care of HRW, they would not have taken HRW into their home or agreed to provide foster care for her.

40. Had the Watkins been aware of the severe and debilitating physical, psychological, and emotional threat that HRW posed to HRW, herself, and to others around her, including, but not limited to, other children prior to commencing their foster care of HRW, the Watkins would not have taken HRW into their home or agreed to provide foster care for her.

41. Had the Watkins been made aware of HRW's deep-rooted psychological and behavioral health and safety issues at any point during their foster care of HRW, they would have terminated the foster care immediately and asked Bethany to remove HRW from their home.

42. Had the Watkins been made aware of the severe and debilitating physical, psychological, and emotional threat that HRW posed to HRW, herself, and to others around her, including, but not limited to, other children during their foster care of HRW, the Watkins would have terminated the foster care immediately and asked Bethany to remove HRW from their home.

43. During the time that HRW was in the Watkins' home as a foster child, she experienced, among other things, some difficulties completing her homework for school and in following guidance and instruction from adults, and she secretly engaged in destructive self-touching, sexual, and masturbation behaviors.

44. The Watkins eventually discovered that HRW was engaging in the self-touching, sexual, and masturbation behaviors and lovingly worked to help HRW address those behaviors.

45. At no point prior to the February 6, 2018 adoption of HRW were the Watkins aware of any sexually-related behaviors by HRW in which HRW involved EHW, JWW, and/or JMW.

46. The Watkins promptly and repeatedly advised Bethany of any and all difficulties HRW experienced, including, but not limited to, HRW's self-touching, sexual, and masturbation behaviors. In each instance, the Watkins asked Bethany for help in understanding HRW's behavior and for direction in how to help HRW.

47. In response to the Watkins' requests for help, Bethany assured the Watkins that HRW was experiencing normal issues associated with being transitioned out of the care of her birth mother and that these issues would "go away."

48. In response to the Watkins' requests for help, Bethany assured the Watkins that HRW was not a risk to others.

49. Bethany assured the Watkins that HRW was not a risk to others on repeated occasions between August 1, 2016, and February 6, 2018.

50. Bethany additionally told the Watkins that HRW's self-touching, sexual, and masturbation behaviors were "self-soothing" actions and that those actions were not

cause for concern. Bethany told the Watkins that HRW's "self-soothing" actions were "normal" and that the Watkins should allow HRW to continue to engage in them.

51. Bethany told the Watkins that the foregoing behaviors of HRW were "no big deal" and that "other families had it a lot worse" than the Watkins.

52. Bethany told the Watkins that they were completely equipped to care for HRW. Bethany also told the Watkins that they were completely equipped to adopt HRW.

53. Bethany made the foregoing statements and assurances to the Watkins about HRW, her condition, and her behaviors both intending that the Watkins rely and act on them and instructing the Watkins to rely and act on them.

54. Unbeknownst to the Watkins, Bethany's statements and assurances to the Watkins about HRW, her condition, and her behaviors were false.

55. The Watkins relied on Bethany's false statements and assurances in caring for HRW, in forming their understanding of HRW's emotional and psychological condition, and in responding to HRW's behaviors both during the time that HRW was in the Watkins' home as a foster child and in reaching a decision to adopt HRW.

56. On multiple occasions between 2016 and February 6, 2018, the Watkins asked Bethany for information on HRW's background and condition, including, but not limited to, a copy of HRW's case file.

57. Bethany had possession and control of HRW's case file at all times from at least August 1, 2016 through January 2021.

58. Bethany did not provide the Watkins with a copy of HRW's case file until April 2018, more than two months after the adoption was completed.

59. Bethany did not discuss any of the information contained in HRW's case file with the Watkins at any point in time.

60. HRW's case file contains extensive documentation of HRW's deep-rooted psychological and behavioral health and safety issues. In addition, HRW's case file documents that HRW suffers signs of Reactive Attachment Disorder, Dissociative Identity Disorder, Schizophrenia, and other psychological and emotional disorders.

61. Documentation of HRW's deep-rooted psychological and behavioral health and safety issues was in Bethany's possession from at least April 20, 2016 through January 2021.

62. At all times between August 1, 2016 and January 2021, Bethany knew and/or should have known that HRW posed a threat to herself and to others, including, but not limited to, other children.

63. During the time that the Watkins were providing foster care for HRW, Bethany encouraged the Watkins to adopt HRW and assured them that HRW's difficulties would "go away once she had the stability of an adoptive family."

64. At the direction of Bethany, the Watkins completed Bethany's Application for Adoption to commence the process of adopting HRW in late April/Early May 2017.

65. On information and belief, Bethany required that a pre-adoption assessment of the Watkins and their home situation be completed before the Watkins would be allowed to adopt a child.

66. On information and belief, Bethany did not complete a pre-adoption assessment related to the Watkins.

67. On information and belief, Bethany did not prepare a pre-adoption assessment report related to the Watkins adopting HRW.

68. Through discussions with Bethany, the Watkins again specified, among other things, that they would not be in a position to adopt a child with sexual behavior or other high risk issues.

69. Contrary to that specification and unbeknownst to the Watkins, Bethany placed a child with sexual behavior issues, HRW, with the Watkins for adoption.

70. Bethany was responsible for, among other things, providing all family, medical, psychological, and other information related to HRW necessary for the Watkins to make an informed decision regarding such an adoption. Additionally, Bethany was responsible for holding a full disclosure meeting/adoption conference with the Watkins so that the Watkins could make an informed decision about the adoption.

71. Bethany failed to provide the Watkins with relevant family, medical, psychological, and other information regarding HRW at any point in time prior to the adoption. Bethany likewise failed to hold a full disclosure meeting/adoption conference with the Watkins.

72. The Kent County Circuit Court authorized and ordered the (continued) placement of HRW in the Watkins' home for pre-adoption purposes on November 16, 2017 ("Placement Order"). A true and correct copy of the Placement Order is attached hereto as Exhibit B and is hereby fully incorporated herein by reference.

73. The Placement Order, among other things, ordered that HRW was to be supervised by Bethany in the Watkins' home from the date of placement by the Court -- November 16, 2017 -- through the date on which HRW was adopted by the Watkins.

74. Bethany failed to adequately provide the supervision of HRW ordered by the Placement Order.

75. By Case Service Plan, dated December 7, 2017, Bethany falsely reported that it had held a full disclosure meeting/adoption conference with the Watkins. This December 7, 2017 Case Service Plan was not provided to the Watkins until January 2021.

76. The Watkins adopted HRW on February 6, 2018.

77. The adoption of HRW by the Watkins was ordered by the Kent County Circuit Court in the State of Michigan on February 6, 2018. A true and correct copy of the February 6, 2018 Adoption Order is attached hereto as Exhibit C and is hereby fully incorporated herein by reference.

78. Prior to the Watkins' February 6, 2018 adoption of HRW, Bethany failed to disclose to the Watkins HRW's deep-rooted psychological and behavioral health and safety issues and the accompanying severe and debilitating physical, psychological, and emotional threat that these issues posed to HRW, herself, and to others around her, including, but not limited to, other children.

79. Had the Watkins been aware of HRW's deep-rooted psychological and behavioral health and safety issues prior to their adoption of HRW, the Watkins would not have adopted HRW.

80. Had the Watkins been aware of the severe and debilitating physical, psychological, and emotional threat that HRW posed to HRW, herself, and to others around her, including, but not limited to, other children, the Watkins would not have adopted HRW.

81. The adoption of HRW by the Watkins as ordered by the Kent County Circuit Court on February 6, 2018, was recommended and approved by Bethany.

82. Unbeknownst to the Watkins, on information and belief, HRW secretly physically, sexually, psychologically, and emotionally abused herself, EHW, JWW, JMW, and possibly others between August 1, 2016, and February 6, 2018.

83. Unbeknownst to the Watkins, on scores and scores of occasions – and, as the passing of time reveals, perhaps more than that – between February 6, 2018, and February 24, 2020, HRW secretly physically, sexually, psychologically, and emotionally abused herself, EHW, JWW, JMW, and possibly others.

84. The Watkins first discovered the aforementioned abuse in January 2020.

85. As soon as they discovered the abuse, the Watkins reported it to Bethany.

86. In response, Bethany told the Watkins that Bethany had been unaware of any sexual abuse in HRW's history and background at the time of HRW's adoption.

87. The Watkins continued to seek help from Bethany, and Bethany eventually stopped returning the Watkins' calls and stopped responding to the Watkins' emails.

88. Since the discovery of the abuse, the Watkins have been working to provide the care to HRW, EHW, JWW, JMW, and LRW that they need.

89. In addition, in the months subsequent to the February 6, 2018 adoption, the Watkins expressed concerns to Bethany about the medical, psychological, and emotional condition and behavior of HRW. Bethany provided no meaningful referrals, recommendations, or advice pertaining to diagnosing and/or treating HRW's specific medical, psychological, and emotional symptoms and condition even though Bethany, unlike the Watkins, had the

specific information about HRW's medical, psychological, and emotional condition through the April 20, 2016 psychological evaluation, HRW's case file, and other materials.

90. On or about February 24, 2020, HRW was placed in a specialty school at Teen Challenge in Alabama to help address her deep-rooted psychological and behavioral health and safety issues and to protect the younger Watkin children.

91. In August 2020, the Watkins discovered more abuse that had taken place at the hands of HRW. The Watkins reported the abuse to Bethany, to the police, and to the Colorado Department of Child Protective Services.

92. In this instance, after being informed of the details of the abuse, the Bethany Director of Child Welfare Services responded "I don't see it."

93. The Watkins, HRW, EHW, JWW, JMW, and possibly others, suffered profound physical, psychological, and emotional damages and trauma as a result of HRW's physical, sexual, psychological, and emotional abuse.

94. The Watkins, HRW, EHW, JWW, and JMW have received psychiatric, psychological, and other medical treatment and counseling to address the trauma, injuries, and damages they each suffered as a result of HRW's condition and her physical, sexual, psychological, and emotional abuse.

95. The Watkins, HRW, EHW, JWW, and JMW will require significant additional psychiatric, psychological, and other medical treatment and counseling in the future to continue to address the trauma, injuries, and damages they each suffered as a result of HRW's condition and her physical, sexual, psychological, and emotional abuse.

96. The Watkins have suffered/incurred additional financial expenses and damages as a result of HRW's condition and her physical, sexual, psychological, and emotional abuse.  Such expenses and damages include, but are not limited to:

   a. Expense for HRW's schooling;

   b. Travel expenses; and

   c. Lost income.

97. The Watkins will continue to incur additional financial expenses related to the items identified in the preceding paragraph in the future.

98. For the remainder of her life, HRW will continue to suffer severe psychological and emotional deficiencies that will need to be treated.

99. The Watkins have incurred, and will continue to incur, considerable expenses to provide the necessary care for HRW throughout the remainder of her life.

100.    Bethany falsely represented that it had provided the Watkins with HRW's case file in November 2017.

101.    In fact, Bethany did not provide what it represented to be HRW's case file to the Watkins until mid-April 2018.

102.    Bethany falsely represented that it had provided the Watkins with Bethany's Initial Service Plan dated April 13, 2016, and Updated Service Plans dated July 12, 2016, October 4, 2016, December 27, 2016, March 20, 2017, June 16, 2017, and September 8, 2017.

103.    Bethany did not provide the Initial Service Plan and the Updated Service Plans identified in the previous paragraph to the Watkins until April 2018.

104.    The Watkins reasonably expected Bethany to provide information relevant to HRW's background and condition and relied on Bethany in proceeding with the adoption, having been led to believe that, if information relevant to HRW's background and condition existed, Bethany would have informed the Watkins accordingly.

105.    Had the Watkins been accurately informed of all of the information relevant to HRW's background and condition that was reasonably available to Bethany at the times during which Bethany interacted with the Watkins, the Watkins would neither have pursued, nor provided foster care for HRW.

106.    Had the Watkins been accurately informed of all of the information relevant to HRW's background and condition that was reasonably available to Bethany at the times during which Bethany interacted with the Watkins, the Watkins would neither have pursued, nor completed, the adoption of HRW.

107.    Further, had Bethany provided appropriate post adoption assistance to the Watkins, HRW's condition could have been fully diagnosed and understood earlier, such that more appropriate treatment may have been provided to HRW at an earlier stage in her life and many of the damages suffered as set forth above could have been avoided.

## COUNT I – FRAUD

108.    Plaintiffs hereby incorporate by reference paragraphs 1 through 107 above as if the same were fully set forth herein.

109.    The statements and representations made to the Watkins by Bethany relating to HRW, including, but not limited to, the multiple statements and representations that HRW was not a threat to others, the representations that Bethany was unaware of any sexual abuse in HRW's history and background at the time of HRW's adoption, the representation that HRW's

issues were "no big deal," the representation that HRW's issues would "go away once she had the stability of an adoptive family," and the representation that Bethany held a full disclosure meeting/adoption conference with the Watkins were material, relevant, and/or related in substance to the Watkins' decision to provide foster care to HRW and to the Watkins' decision to pursue and complete the adoption of HRW.

110.    The foregoing statements and representations made to the Watkins by Bethany relating to HRW were false, inaccurate, misleading, and/or materially incomplete.

111.    Bethany made the foregoing statements and representations knowing that they were false, inaccurate, misleading, and/or materially incomplete.

112.    Bethany made the foregoing false, inaccurate, misleading, and/or materially incomplete statements and representations intending that the Watkins rely on them.

113.    The Watkins reasonably and justifiably relied on the foregoing false, inaccurate, misleading, and/or materially incomplete statements and representations and did so to the significant detriment of the Watkins, HRW, EHW, JWW, JMW, and LRW.

114.    The Watkins, HRW, EHW, JWW, JMW, and LRW suffered trauma, injuries, and damages, as a result.

116.    Bethany had a duty, by operation of law and/or by assuming the same, to disclose to the Watkins full, complete, and accurate information pertaining to HRW, her background, and her condition, including, but not limited to: a.) the family, medical, psychological, history, and background records, documents, and information pertaining to HRW and her condition; b.) the information that HRW suffered from deep-rooted psychological and behavioral health and safety issues and that, because of these issues, HRW constituted a severe and debilitating physical, psychological, and emotional threat to herself, and to others around her, including, but not limited to, other children; c.) the information from HRW's foster placement from March 2016

through July 2016 set forth herein; d.) the substance of HRW's case file; and e.) the substance of the April 20, 2016 psychological evaluation identified herein. Bethany had a duty to disclose this information to the Watkins prior to placing HRW in foster care with the Watkins, and also prior to placing HRW with the Watkins for adoption, and also prior to the February 6, 2018 adoption hearing.

117. Between at least August 1, 2016, and mid-April 2018, Bethany withheld from the Watkins: a.) the family, medical, psychological, history, and background records, documents, and information pertaining to HRW and her condition; b.) the information that HRW suffered from deep-rooted psychological and behavioral health and safety issues and that, because of these issues, HRW constituted a severe and debilitating physical, psychological, and emotional threat to herself, and to others around her, including, but not limited to, other children; c.) the information from HRW's foster placement from March 2016 through July 2016 set forth herein; d.) the substance of HRW's case file; and e.) the substance of the April 20, 2016 psychological evaluation identified herein.

118. Bethany withheld the foregoing information from the Watkins until at least April 2018 knowing that the Watkins were relying on Bethany to timely provide the Watkins with full, complete, and accurate information pertaining to HRW prior to the placement of HRW with the Watkins as a foster child, prior to the placement of HRW with the Watkins for adoption, and prior to the February 6, 2018 adoption hearing.

119. The information withheld by Bethany was material, relevant, and critical to the Watkins' decisions to provide foster care for HRW and to adopt HRW. The withholding of the information was a falsehood, and it created a false, inaccurate, misleading, and/or materially incomplete set of "facts" for the Watkins.

120.     This withholding of information by Bethany materially breached Bethany's duties to disclose the requisite full, complete, and accurate information pertaining to HRW, her background, and her condition to the Watkins.

121.     As a proximate result of Bethany's breach, the Watkins, HRW, EHW, JWW, JMW, and LRW suffered trauma, injuries, and damages.

122.     At the time that Bethany withheld the full, complete, and accurate information pertaining to HRW and her background and condition from the Watkins, and prior to placing HRW in foster care with the Watkins, and prior to placing HRW with the Watkins for adoption, and prior to the February 6, 2018 adoption hearing, Bethany knew that its withholding of this information constituted and created a false, inaccurate, misleading, and/or materially incomplete representation of HRW's background and condition to the Watkins.

123.     At the time that Bethany withheld full, complete, and accurate information pertaining to HRW, her background, and her condition from the Watkins, Bethany did so intending that the Watkins rely on Bethany and the totality of the information that Bethany had in fact disclosed to the Watkins.  Bethany was fully aware of the Watkins' reasonable expectation to receive full, complete, and accurate information pertaining to HRW, her background, and her condition.

124.     The Watkins reasonably and justifiably relied on Bethany's actions even though those actions included the withholding of information pertaining to HRW, her background, and her condition, and the Watkins did so to the significant detriment of the Watkins, HRW, EHW, JWW, JMW, and LRW.  The Watkins, HRW, EHW, JWW, JMW, and LRW were traumatized, injured, and damaged as a result.

125.     The issuance of the foregoing statements and representations by Bethany to the Watkins, as well as the act of withholding full, complete, and accurate information pertaining to

HRW, her background, and her condition from the Watkins induced the Watkins to proceed with and complete both the foster care and the adoption of HRW.

126.    Through the foregoing statements, representations, and omissions, Bethany exhibited a reckless disregard for the interests of HRW and the Watkins.

127.    The Watkins reasonably and justifiably relied on the statements, representations, and omissions made by Bethany because, in part, Bethany was the Watkins' adoption specialist and agent, and because, in part, Bethany had informed the Watkins that full, complete, and accurate information regarding HRW's background and condition would be provided to them.

128.    But for Bethany's aforementioned false, inaccurate, misleading, and/or materially incomplete statements, representations, and omissions, the Watkins would not have proceeded with or completed the foster care of HRW.

129.    But for Bethany's aforementioned false, inaccurate, misleading, and/or materially incomplete statements, representations, and omissions, the Watkins would not have proceeded with or completed the adoption of HRW.

130.    As a direct and proximate result of the false, inaccurate, misleading, and/or materially incomplete statements, representations, and omissions of Bethany, the Watkins have suffered, and will continue to further suffer, trauma, injuries, and damages, including, but not limited to, the costs of past, present, and future medical, physical, psychiatric, psychological, emotional, and educational care and treatment for HRW, the Watkins, EHW, JWW., JMW, LRW, and/or others.

131.    As a further direct and proximate result of the false, inaccurate, misleading, and/or materially incomplete statements, representations, and omissions of Bethany, the Watkins, HRW, EHW, JWW, JMW, and/or LRW were damaged in that they were denied their right to make an informed choice as to whether or not to proceed with the adoption of HRW.   Had

Bethany fully and accurately disclosed to the Watkins the complete information regarding HRW's background and condition, as set forth herein, the Watkins would neither have proceeded with, nor completed, the foster care of HRW or the adoption of HRW.

132.    The failure of Bethany to provide the Watkins with full, complete, and accurate information pertaining to HRW, her background, and her condition was fraudulent.

WHEREFORE**,** Plaintiffs**,** Benjamin Edward Watkin and Sharon Elizabeth Watkin**,** individually, as husband and wife, and as the parents and guardians of their minor children, HRW, EHW, JWW, JMW, and LRW, respectfully request that judgment be entered in their favor and against Defendants in an amount in excess of $75,000, plus interest, punitive damages, attorneys' fees, costs, and such further relief as this Court deems just and appropriate.

## COUNT II – NEGLIGENT MISREPRESENTATION

133.    Plaintiffs hereby incorporate by reference paragraphs 1 through 132 above as if the same were fully set forth herein.

134.    Bethany, in the course of performing its work as an adoption agency, made the aforementioned statements and representations relating to HRW to the Watkins, including, but not limited to, Bethany's multiple statements and representations that HRW was not a threat to others, the representations that Bethany was unaware of any sexual abuse in HRW's history and background at the time of HRW's adoption, the representation that HRW's issues were "no big deal," the representation that HRW's issues would "go away once she had the stability of an adoptive family," and the representation that Bethany held a full disclosure meeting/adoption conference with the Watkins.

135.    The foregoing statements and representations made to the Watkins by Bethany were false, inaccurate, misleading, and/or materially incomplete.

136.    The foregoing false, inaccurate, misleading, and/or materially incomplete statements and representations by Bethany were material, relevant, and/or related in substance to the Watkins' decisions to provide foster care for HRW and to adopt HRW.

137.    Bethany made the foregoing false, inaccurate, misleading, and/or materially incomplete statements and representations without reasonable care and/or recklessly.

138.    Bethany made the foregoing false, inaccurate, misleading, and/or materially incomplete statements and representations knowing and/or intending that the Watkins would rely on them.

139.    The Watkins reasonably and justifiably relied on the foregoing false, inaccurate, misleading, and/or materially incomplete statements and representations and did so to the significant detriment of the Watkins, HRW, EHW, JWW, JRW, and LRW.

140.    The Watkins, HRW, EHW, JWW, JMW, and LRW suffered trauma, injuries, and damages as set forth herein, as a result.

141.    Between at least August 1, 2016, and mid-April 2018, Bethany, in the course of performing its work as an adoption agency, withheld from the Watkins critical information regarding HRW's background and condition, including, but not limited to, information that HRW suffered from deep-rooted psychological and behavioral health and safety issues and that, because of these issues, HRW constituted a severe and debilitating physical, psychological, and emotional threat to herself, and to others around her, including, but not limited to, other children, and the information from HRW's foster placement from March 2016 through July 2016 set forth herein.

142.    The information withheld was material, relevant, and critical to the Watkins' decisions to provide foster care for HRW and to adopt HRW.  The withholding of the

information was a falsehood, and it created a false, inaccurate, misleading, and/or materially incomplete set of "facts" for the Watkins.

143. Bethany's withholding of the information and the creation of a false, inaccurate, misleading, and/or materially incomplete set of "facts" for the Watkins was done without reasonable care and/or recklessly.

144. Bethany represented to the Watkins that the Watkins had been provided with all information related to HRW's background and condition at multiple points during the Watkins' foster care of HRW and prior to the February 6, 2018 adoption of HRW.

145. This representation was material, relevant, and critical to the Watkins' decisions to provide foster care for HRW and to adopt HRW. This representation was also false, inaccurate, misleading, and/or materially incomplete.

146. This representation was made without reasonable care and/or recklessly.

147. At the time that Bethany withheld critical information regarding HRW's background and condition from the Watkins, and at the time that Bethany represented that the Watkins had been provided with all information related to HRW's background and condition, Bethany undertook these actions knowing and/or intending that the Watkins rely on them.

148. The Watkins reasonably and justifiably relied on Bethany's actions even though those actions included the withholding of critical information regarding HRW's background and condition. The Watkins also reasonably and justifiably relied on Bethany's representation that the Watkins had been provided with all information related to HRW's background and condition. The Watkins so relied to the significant detriment of the Watkins, HRW, EHW, JWW., JMW, and LRW.

149. The Watkins, HRW, EHW, JWW, JMW, and LRW were traumatized, injured, and damaged as set forth herein, as a result.

WHEREFORE**, Plaintiffs**, Benjamin Edward Watkin and Sharon Elizabeth Watkin**,** individually, as husband and wife, and as the parents and guardians of their minor children, HRW, EHW, JWW, JMW, and LRW, respectfully request that judgment be entered in their favor and against Defendants in an amount in excess of $75,000, plus interest, punitive damages, attorneys' fees, costs, and such further relief as this Court deems just and appropriate.

## COUNT III – NEGLIGENT FAILURE TO DISCLOSE

150. Plaintiffs hereby incorporate by reference paragraphs 1 through 149 above as if the same were fully set forth herein.

151. Bethany owed duties to the Watkins, HRW, EHW, JWW, JMW, and LRW to provide the Watkins with all family, medical, psychological, history, and background records, documents, and information pertaining to HRW and her condition prior to the Watkins undertaking the foster care of HRW and also prior to the adoption of HRW.

152. Bethany negligently and materially breached these duties.

153. The Watkins, HRW, EHW, JWW, JMW, and LRW suffered trauma, injuries, and damages as a result of Bethany's negligence and material breach as set forth above.

154. Bethany is liable to the Watkins, EHW, JWW, JMW, and LRW for the trauma, injuries, and damages they suffered.

WHEREFORE**, Plaintiffs**, Benjamin Edward Watkin and Sharon Elizabeth Watkin**,** individually, as husband and wife, and as the parents and guardians of their minor children, HRW, EHW, JWW, JMW, and LRW, respectfully request that judgment be entered in their favor and against Defendants in an amount in excess of $75,000, plus interest, punitive damages, attorneys' fees, costs, and such further relief as this Court deems just and appropriate.

## COUNT IV- NEGLIGENCE

155.    Plaintiffs hereby incorporate by reference paragraphs 1 through 154 above as if the same were fully set forth herein.

156.    Bethany owed duties to the Watkins, HRW, EHW, JWW., JMW, and LRW to provide the Watkins with the family, medical, psychological, history, and background records, documents, and information pertaining to HRW and her condition that were in Bethany's possession, custody, or control and to do so within a reasonable amount of time.

157.    Within a reasonable amount of time in this case meant, at a minimum, prior to Bethany's placement of HRW under the foster care of the Watkins, and also prior to Bethany's placement of HRW with the Watkins for adoption, and also prior to the February 6, 2018 adoption hearing.

158.    Bethany failed to furnish the Watkins with the family, medical, psychological, history, and background records, documents, and information pertaining to HRW and her condition prior to placing HRW with the Watkins for adoption, and also prior to the February 6, 2018 adoption hearing.

159.    In so doing, Bethany materially breached its duties to the Watkins, HRW, EHW, JWW, JMW, and LRW.

160.    As a proximate result of Bethany's breach, the Watkins, HRW, EHW, JWW, JMW, and LRW suffered trauma, injuries, and damages.

161.    As a licensed adoption agency in the State of Michigan providing services to children and families, Bethany owed a duty to the Watkins, HRW, EHW, JWW, JMW, and LRW to fully and accurately disclose the family, medical, psychological, history, and background records, documents, and information pertaining to HRW and her condition.

26

162. Bethany undertook and separately assumed the same duty to the Watkins, HRW, EHW, JWW, JMW, and LRW based on Bethany's representations to the Watkins that Bethany would provide the Watkins with all information relevant to HRW and all information needed to help care for Hannah.

163. Bethany materially breached, and negligently failed to fulfill, its duty to fully and accurately disclose the family, medical, psychological, history, and background records, documents, and information pertaining to HRW and her condition to the Watkins, including, but not limited to, the April 20, 2016 psychological evaluation, HRW's case file, and the information from HRW's foster placement from March 2016 through July 2016 set forth herein at any point prior to the February 6, 2018 adoption.

164. Bethany's material breach of duty and negligent failures proximately caused the Watkins, HRW, EHW, JWW, JMW, and LRW to suffer trauma, injuries, and damages.

165. Bethany is liable to the Watkins, HRW, EHW, JWW, JMW, and LRW for the trauma, damages and injuries suffered.

WHEREFORE**,** Plaintiffs**,** Benjamin Edward Watkin and Sharon Elizabeth Watkin**,** individually, as husband and wife, and as the parents and guardians of their minor children, HRW, EHW, JWW, JMW, and LRW, respectfully request that judgment be entered in their favor and against Defendants in an amount in excess of $75,000, plus interest, punitive damages, attorneys' fees, costs, and such further relief as this Court deems just and appropriate.

Respectfully submitted,

Dated:  May 11, 2021         By:    */s/ Kevin Abraham Rynbrandt* (see attached Exhibit A for pdf's of all actual signatures)
Kevin Abraham Rynbrandt (P46699)
Attorney for Plaintiffs
1000 Front Avenue, N.W.
Grand Rapids, MI  49504
Telephone: (616) 915-9266

**JURY DEMAND**

Plaintiffs hereby demand a jury in this action.

Dated: May 11, 2021                    By:    */s/ Kevin Abraham Rynbrandt* (see
                                       attached Exhibit A for pdf's of all actual signatures)
                                       Kevin Abraham Rynbrandt (P46699)
                                       Attorney for Plaintiffs
                                       1000 Front Avenue, N.W.
                                       Grand Rapids, MI  49504
                                       Telephone: (616) 915-9266

## PLAINTIFFS' VERIFICATION

Benjamin Edward Watkin and Sharon Elizabeth Watkin hereby declare under penalty of perjury that all of the statements made in the foregoing Verified Complaint and Demand for Jury are true and correct.

___May 11, 2021___                     */s/ Benjamin Edward Watkin* (sig.- Exhib A)
       Date                            Benjamin Edward Watkin

___May 11, 2021___                     */s/ Sharon Elizabeth Watkin* (sig. - Exhib A)
       Date                            Sharon Elizabeth Watkin